IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CV11

US LEC COMMUNICATIONS, INC.;           )
US LEC OF ALABAMA, INC.; US LEC OF     )
FLORIDA, INC.; US LEC OF GEORGIA, INC.; )
US LEC OF MARYLAND, INC.; US LEC OF    )
NORTH CAROLINA, INC.; US LEC OF        )
SOUTH CAROLINA, INC.; US LEC OF        )
PENNSYLVANIA, INC.; US LEC OF          )
TENNESSEE, INC.; and UA LEC OF         )
VIRGINIA, INC.,                        )
                                       )
          Plaintiffs,                  )
                                       )
vs.                                    )                    ORDER
                                       )
QWEST COMMUNICATIONS                   )
CORPORATION,                           )
                                       )
          Defendant.                   )
_____)

     This matter is before the court upon the Plaintiffs' Motion to Dismiss. Plaintiffs seek

dismissal of Defendant's counterclaims for fraud, negligent misrepresentation and unfair and

deceptive trade practices pursuant to Rule 12(b)(6) for failure to state a claim upon which relief

may be granted.

## FACTS

     The Plaintiffs (collectively, "US LEC") are competitive local exchange carriers

("CLECs") that provide telecommunications facilities and services in the states or regions where

they do business. Plaintiffs deliver local, long distance and data services to customers. In

addition, the Plaintiffs provide access services to various customers, including interexchange

carriers ("IXCs") (commonly referred to as "long distance carriers") like the Defendant and commercial mobile radio service carriers (commonly referred to as "wireless carriers"). IXCs utilize the networks of CLECs and incumbent local exchange carriers ("LECs") to transport long distance calls either to or from the IXC network to the customer's location. IXCs like the Defendant Qwest pay LECs "access charges" for use of their networks to complete long distance calls. The US LEC Plaintiffs' access charges for services are determined by and set forth in tariffs and price lists filed by the US LEC Plaintiffs with the FCC and in the states in which each US LEC Plaintiff does business.

The dispute in this case centers around US LEC's originating access service charges to Qwest for US LEC's handling and transmission to Qwest of toll free calls by wireless callers to Qwest's customers. Qwest alleges that US LEC is in violation of its tariffs in charging Qwest these access charges , and that the FCC has prohibited wireless carriers from charging originating access charges to IXCs like Qwest unless the carrier and Qwest have agreed to these charges in a written contract. Qwest began withholding payment for these charges and other services in order to recoup what it claims were payments unlawfully obtained by US LEC over preceding years. US LEC filed this lawsuit to recover such payments it alleges have been wrongfully withheld. Qwest has filed a Counterclaim alleging breach of contract, breach of tariff, unjust enrichment, fraud, negligent misrepresentation, money had and received, and violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). US LEC seeks to dismiss Qwest's counterclaims for fraud, negligent misrepresentation and unfair and deceptive trade practices.

## DISCUSSION

A. Standard for Motion to Dismiss:

A motion to dismiss for failure to state a claim upon which relief may be granted should be allowed if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.  Greenhouse v. MCG Capital Corp., 392 F.3d 650, 655 (4th Cir. 2004).  A motion to dismiss should be granted if the complaint itself fails to allege the elements for a cause of action or facts sufficient to support such elements.  Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.), cert. denied, 540 U.S. 940 (2003).  Moreover, "allegations must be stated in terms that are neither vague nor conclusory."  Estate Constr. Co. v. Miller & Smith holding Co., 14 F.3d 213, 220-221 (4th Cir. 1994).

B. Counterclaims for Fraud and Negligent Misrepresentation:

Plaintiffs claim that Qwest's fraud and negligent misrepresentation claims are alleged to stem directly from the acts it asserts are breaches of contract, specifically, breaches of obligations under the tariffs at issue. In order to state a viable claim in tort for conduct that is alleged to breach a contract, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract."  Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F. Supp. 350, 362 (W.D.N.C. 1997).   This "independent duty" exception has been "carefully circumscribed by state law."  Strum v. Exxon Co.,USA, 15 F.3d 327, 331 (4th Cir. 1994). The independent tort must be identifiable and "the tortious conduct must have an aggravating element such as malice or recklessness." Id.

Qwest asserts that its tort claims are based upon Plaintiff "misrepresent[ing] in its invoices the nature of the wireless-originated toll-free call access charges being billed and

fraudulently concealed the nature of these charges in its invoice descriptions." (Counterclaim ¶ 45). In other words, Qwest contends that Plaintiffs' invoices did not identify the charges as charges for wireless-originated toll free calls but instead described the charges as though they were from landline callers. Qwest alleges that it was therefore "deceived" into paying charges that were not owed. (Counterclaim ¶¶ 24, 26).

As much as Qwest attempts to characterize its allegations as tort claims, a review of Defendant's Amended Counterclaim reveals that Qwest's fraud and negligent misrepresentation claims are premised on the same facts as its breach of contract claims, namely that Plaintiffs violated their tariffs in charging Qwest for wireless-originated toll free calls. There are no allegations in the Counterclaim of a separate and independent duty owed by Plaintiffs outside of any contractual relationship. Moreover, the court notes that the Counterclaim fails to allege that Plaintiffs had the capacity or the obligation either under or outside of a contract to present charges of a particular nature differently than it did for any other charges. Nor does Qwest allege that the manner in which Plaintiffs assessed those charges was in any way done with the requisite "malice or recklessness" sufficient to convert these claims into tort claims. Accordingly, Defendant's fraud and negligent misrepresentation claims are hereby dismissed.[1]

C. North Carolina Unfair and Deceptive Trade Practices Act:

It is clear that a mere breach of contract, even if intentional, is not enough to sustain a claim under the NCUDTPA. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998); Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 62, 418

---

[1] Having determined that Defendants' claims must be dismissed for failure to allege an independent duty, the court finds it unnecessary to address Plaintiffs' argument regarding the "economic loss" rule.

S.E.2d 694, 700 (1992). In order to rise to the level of a claim under the NCUDTPA, "substantial aggravating circumstances" must be present. United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981). Moreover, the acts or practices complained of must be "actually deceptive or approach deception" and must be "present at the time of contract formation." Id.

Like its fraud and negligent misrepresentation claims, Qwest's NCUDTPA claim is premised on its theory that Plaintiffs' charges were wrongful because the tariffs did not permit them. Conclusory claims of deception and misrepresentation do not convert these contract claims into a NCUDTPA claim. See Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 534-36 (4th Cir. 1989) (alleged deceptive statements that an oral distributorship contract would not be terminated were breach of contract claims and not UDTPA claims, despite claim of substantially aggravating factors such as product tampering, delayed reimbursements, and settlement pressure.); Hageman v. Twin City Chrysler-Plymouth, Inc., 681 F.Supp. 303, 307 (M.D.N.C. 1988) (alleged deceptive representations regarding contract rights made after contract executed did not rise to the level of UDTPA claim).

In addition, Defendant, whose principal place of business is in Colorado, has failed to allege that it suffered substantial in-state injury. Courts have determined that in order to pursue a NCUDTPA claim, the claim must involve "an in-state injurious effect on [plaintiff's] business operations in North Carolina," and the claim "must implicate an effect that is 'substantial . . . on a plaintiff's in-state business . . .'" Dixie Yarns, Inc. v. Plantation Knits, Inc., 1994 WL 910955, at *2 (W.D.N.C. July 12, 1994) (citing The 'In' Porters, S.A. v. Hanes Printables, Inc., 663 F.Supp. 494, 501-02 (M.D.N.C. 1987). Accordingly, Defendant's NCUDTPA claim must be

dismissed as well.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Dismiss is hereby GRANTED

and Defendant's Fourth, Fifth and Seventh Claims for Relief are hereby DISMISSED.

Signed: May 15, 2006

Graham C. Mullen
United States District Judge